UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS C. DANIELS,<br><br>    Petitioner,<br><br>  v.<br><br>JILL BROWN, warden,<br><br>    Respondent.<br>_____ / | No. C 05-2684 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

Louis C. Daniels, a prisoner at San Quentin State Prison, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Louis C. Daniels was convicted in San Francisco County Superior Court of numerous crimes in April 1977 based on his attacks on six women on different days in November 1976 and weapon-possession crimes in December 1976. Specifically, Daniels was convicted of rape (four counts), assault with a deadly weapon (six counts), false imprisonment by violence and menace (three counts), first-degree attempted robbery (three counts) first-degree robbery (two counts), assault with intent to commit rape, kidnapping to commit robbery (two counts), burglary with intent to commit rape or first-degree theft, unlawful possession of stolen property, possession of a concealable firearm by a felon (two counts) and being a felon with a concealed firearm on

1  his person.[1] Sentence enhancements for deadly weapon possession and use of a firearm were
2  found for several of the offenses. The parties report that Daniels was sentenced to life
3  imprisonment with the possibility of parole. The abstract of judgment was amended in 1979
4  pursuant to a remittitur. The amended abstract of judgment has a very detailed recitation of how
5  the sentences were to be served with respect to each other (i.e., some consecutive, some
6  concurrent and some stayed). See Resp. Exh. 1.

7  Daniels' federal habeas petition does not concern the 1977 conviction or sentence
8  imposed directly, but instead claims that the refusal of the Board of Prison Terms ("BPT") in
9  December 2001 to set a term of years violated his federal constitutional rights to due process,
10 to equal protection of the laws, and to be free from ex post facto laws. He "does not contend he
11 is entitled to be found parole . . . suitable" but instead contends he has a separate right to have
12 his term of years set regardless of suitability. Petition, p. 2.

13 The California Supreme Court summarily denied his petition for writ of habeas corpus
14 in which he asserted the federal constitutional claims he now raises. The court previously
15 discussed Daniels' efforts to litigate his claims in state court and will not repeat the analysis here.
16 See Order Denying Motion To Dismiss And Setting Briefing Schedule, pp. 4-7. It suffices to
17 say that the court considers the claims to have been fairly presented to the California Supreme
18 Court and that there is no reasoned state court decision addressing the merits of the claims.

**JURISDICTION AND VENUE**

21 This court has subject matter jurisdiction over this habeas action for relief under 28
22 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged
23 action occurred at San Quentin State Prison, in Marin County, California, within this judicial
24 district. 28 U.S.C. §§ 84, 2241(d).

---

[1] He also was convicted in Marin County Superior Court in August 1981 of lewd and lascivious conduct with a child for molesting his stepdaughter while he was in custody. The 1981 conviction and sentence are not relevant to the issues in dispute in this habeas action

2

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006). There is not a reasoned decision from a California court addressing the federal claims raised in Daniels' petition.

## DISCUSSION

Daniels contends that the parole authority (which was known as the Adult Authority in the 1970s, and later as the Board of Prison Terms and currently as the Board of Parole Hearings) had a specific obligation to set his term of years. He apparently wants the BPT to set a definite term of years that will constitute his complete sentence so that he will know when he can expect

3

1  to be released from prison. His claimed right to have his term of years set is based on his
2  interpretation of the California Supreme Court's decision in In re. Rodriguez, 14 Cal. 3d 639
3  (Cal. 1975). As will be shown below, he misunderstands Rodriguez. Rodriguez and California
4  law in general do not provide Daniels a right to have a term of years set. His federal
5  constitutional claims all hinge on the existence of such a right and all fail with the determination
6  that the right does not exist.

8  A.     ISL and DSL Basics

9        California used an indeterminate sentencing law ("ISL") until 1977 and has used a
10 determinate sentencing law ("DSL") since then. Under the ISL, the trial court did not set a term
11 of years but instead sentenced the defendant to a usually wide range of years as provided by law,
12 such as "1 year to life" and the parole authority then would determine the length of the term each
13 defendant actually would serve.

14        When Daniels committed his crimes and was convicted, the ISL was the law of
15 California. At the time he committed his crimes, the punishment for kidnapping for robbery was
16 "imprisonment in the state prison for life with possibility of parole in cases where no such person
17 suffers death or bodily harm." See former Cal. Penal Code § 209; 1973 Cal. Stat. ch. 719, p.
18 1300. A prisoner who was imprisoned under a life sentence could not be paroled "until he [had]
19 served at least seven calendar years." Cal. Penal Code § 3046. When a person was convicted
20 of an offense for which imprisonment was prescribed by law, the court imposing the sentence
21 did not fix the term or duration of the period of imprisonment. See Cal. Penal Code § 1168.
22 Instead, the Adult Authority was authorized to determine the length of time a person should
23 remain in prison within the outer limits of the indeterminate sentence imposed. See Cal. Penal
24 Code § 3020 (repealed July 1, 1977). The Adult Authority also was authorized to allow
25 prisoners to go upon parole. See Cal. Penal Code § 3040. The matter of parole was
26 discretionary: "In any case the matter of parole may be determined by the Adult Authority at
27 any time after the actual commencement of such imprisonment." Cal. Penal Code § 3041
28 (emphasis added). "Between 1972 and 1977, it was the judicially approved policy of California

4

1 that prisoners should be accorded an annual parole suitability review, except that in extreme
2 cases the review could be every two or three years." Connor v. Estelle, 981 F.2d 1032, 1034 (9th
3 Cir. 1992) (per curiam) (citations omitted).
4      In 1977, the DSL replaced the ISL. The DSL prescribes sentences of a set duration for
5 each crime. However, the sentences for kidnapping for robbery (like the sentences for certain
6 murders) remain indeterminate.

### B. Parole Dates And Suitability Determinations

     Under state law, a life prisoner must first be found suitable for parole before a parole date is set. See In Re Stanworth, 33 Cal. 3d 176, 183 (Cal. 1982). The failure to set a parole date did not violate the Ex Post Facto Clause, U.S. Const. art. I, § 10. "To fall within the ex post facto prohibition, a law must be retrospective -- that is, 'it must apply to events occurring before its enactment' -- and it 'must disadvantage the offender affected by it,' ... by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations omitted). The California law concerning the setting of a parole date was not changed. The ISL and DSL both required that the prisoner be found suitable for parole before a parole date could be set. See Stanworth, 33 Cal. 3d at 183. And the ISL and DSL both used the same criteria for determining whether a prisoner was suitable for parole. See Connor v. Estelle, 981 F.2d at 1033-34. The Ex Post Facto Clause was not violated because the law did not change to the detriment of the prisoners. Neither the DSL nor the ISL imposed on the BPT an obligation to set a parole release date because Daniels has never been found suitable for parole.

### C. There Is No Separate Right To Have A Term For Years Set

     Daniels argues that the parole authority has a separate duty to set or fix a particular prisoner's term. His argument is based on a misunderstanding of In Re. Rodriguez, 14 Cal. 3d 639 (Cal. 1975).

     Under California law, a prisoner whose maximum term may be disproportionate to his

5

individual culpability has a right to have his term set at a number of years that is proportionate to his offense so as to avoid the imposition of cruel and unusual punishment. See generally Rodriguez, 14 Cal. 3d at 651-52. The question in Rodriguez was whether the prisoner's indeterminate life sentence amounted to unconstitutional cruel and unusual punishment. Rodriguez had served 22 years of an indeterminate 1-year-to-life sentence for lewd conduct on a child (see Cal. Penal Code § 288) and claimed that his life maximum sentence was disproportionate to the offense and thus violated both the state and federal constitutional prohibitions on cruel and unusual punishment. The court noted that a conviction under Penal Code § 288 could be based on a great range of conduct, some of which was extremely serious and some of which was far less serious; thus, § 288 "encompassse[d] conduct for which life might be a permissible punishment in some cases but excessive in others." 14 Cal. 3d at 647. In order to analyze Rodriguez's cruel and unusual punishment claim, it was necessary to look beyond the facial validity of § 288 and consider particular sentence Rodriguez received for his violation of § 288. See 14 Cal. 3d at 648-49. To do so, a term of years had to be set for the court to determine whether that term violated the prohibition on cruel and unusual punishment for that prisoner's crime. Significantly, if a term was not set for a prisoner, the term would be presumed to be the statutory maximum. See Rodriguez, 14 Cal. 3d at 654 n.18.

Less than two months before Rodriguez, the California Supreme Court stated that "a defendant under an indeterminate sentence has no vested right to have his sentence fixed at the term first prescribed by the Adult Authority or any other period less than the maximum sentence provided by statute. . . . It has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term, . . . subject only to the ameliorative power of the Adult Authority to set a lesser term. . . . . But these propositions, valid in the abstract, must be qualified when the maximum term is challenged as disproportionate. In such a case a defendant has an undeniable vested right in insuring that his term be fixed proportionately to his offense." People v. Wingo, 14 Cal. 3d 169, 182 (Cal. 1975) (citations and quotation marks omitted). The Wingo court further explained that, "in the case of a life term convict who the [parole authority] does not believe merits a lesser term it may, and customarily does, act by simply refraining from

1  fixing his term at a span of years. Since by statute he is already serving a life term there is no
2  occasion for the [parole authority] to re-declare the fact." Id. at 183 (citations and quotation
3  marks omitted).   Lastly, the court recognized that term-setting was not mandatory, when it
4  referred to the time for filing a habeas petition as being "when such a term is set, or if the
5  Authority within a reasonable time decides not to fix a term." Id. at 184; see also id. at 184 n.16
6  (rejecting dissent's assertion that the majority opinion is altering the ISL, and stating that the
7  opinion does not affect the discretion vested by law in the parole authority).

8       Rodriguez does not create an enforceable right to have a term of years set. Rodriguez and
9  Wingo establish that the parole authority has a duty to set a term of years and that the term will
10 be presumed to be the statutory maximum if no term is set. The term-setting is done as a means
11 to the end of doing a cruel and unusual punishment analysis and not as an end to itself. Daniels
12 does not claim that life imprisonment is disproportionate to his particular crimes; therefore, no
13 cruel and unusual punishment analysis is done and there is no need for term-setting as a step for
14 such an analysis. His term of imprisonment is presumed to be the statutory maximum of life
15 imprisonment. Furthermore, the parole authority has no duty to set a parole date because
16 Daniels has not yet been found suitable for parole. As discussed in the preceding section, the
17 California Supreme Court has determined that, under California law, a prisoner must be found
18 suitable for parole before the parole authority has a duty to set a parole date.

19      To the extent Daniels contends that the setting of a term of years is a separate
20 determination – separate from the determination of whether he is suitable and separate from the
21 setting of his parole date – his claim still fails. The writ of habeas corpus would not be available
22 to him if the setting of the term did not affect the length of time he must spend in custody. The
23 writ is available to challenge the fact or duration of one's confinement but not to challenge
24 decisions that have no consequence relating to the fact or duration of one's confinement.
25 Additionally, if the setting of the term did not affect the duration of his incarceration, it would
26 not affect the amount of the punishment for his offense, and the Ex Post Facto Clause would not
27 be implicated by the decision.
28

7

D.     The Federal Constitutional Claims Fail

All three of Daniels' federal constitutional claims fail because the claimed right to have a term of years set does not exist. First, there was no Ex Post Facto Clause violation because there was no law in place at the time of his crimes and conviction that required a term of years to be set for him. There was no change in the law that would trigger the Ex Post Facto Clause. Today, as at the time of Daniels' crimes and convictions, Daniels has to be found suitable for parole before a parole date had to be set. Second, there was no equal protection violation because there was no unequal treatment of similarly situated people. Daniels was not similarly situated to persons whose crimes were of the sort that received determinate sentences under the DSL sentencing scheme. He has not shown that the parole authority set terms of years for other persons who had indeterminate sentences for kidnappings for robbery or for other crimes that continued to receive indeterminate sentences even after the change from ISL to DSL in California. Third, no due process violation occurred because there was no state-created liberty interest in having a term of years set for a person convicted of kidnapping for robbery. Because Daniels has repeatedly stated he does not contend he was suitable for parole, the court need not decide the separate issue of whether there was some evidence to support the BPT's decision in 2001 that he was not suitable for parole. There being no constitutional violation, the California Supreme Court's rejection of his claims was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits. Petitioner's motion for sanctions is DENIED. (Docket # 13.) The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 30, 2006

SUSAN ILLSTON
United States District Judge